IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VELMA HARTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 05-0697 |
| | ) |
| JO ANNE B. BARNHART, | ) Judge Thomas M. Hardiman |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Velma Hartman (Hartman) brings this action pursuant to 42 U.S.C. §405(g) of

the Social Security Act (Act), seeking review of the final determination of the Commissioner of

Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB).

This matter is before the Court on the parties' cross motions for summary judgment under Rule

56 of the Federal Rules of Civil Procedure based on the record developed at the administrative

proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the

memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence.  Therefore, the Court will deny Plaintiff's motion for summary judgment

and affirm the determination by the Commissioner.

## II.     Procedural History

Plaintiff applied for DIB on December 8, 2003, claiming disability as of June 28, 2001, because of a shoulder injury and high blood pressure. (R. 119). Plaintiff then requested an administrative hearing, which was held on November 23, 2004 before ALJ David J. Goldman at which Plaintiff, her husband, and daughter testified. (R. 32-81). Plaintiff was represented at the hearing by Simon John, Esq. After ALJ Goldman issued an unfavorable decision on December 29, 2004, Plaintiff filed an appeal on January 13, 2005, which was denied by the Appeals Council on March 16, 2005, rendering the ALJ's opinion the final decision of the Commissioner. (R. 6-8).

## III.     Facts

Plaintiff Hartman was 44 years of age at the time of the ALJ's decision, making her a "younger person" under the regulations. 20 C.F.R. §404.1563. She has a high school diploma and has worked in the past as a nursing home assistant, laborer, house cleaner, nurse's aide, and cashier. (R. 124, 137, 159).

The record reflects that Hartman was involved in a motor vehicle accident in June or July 2001 in which she injured her neck and right shoulder. (R. 191, 211). Hartman continued to work until October 2001, when she sought treatment for neck and shoulder pain. From October 17, 2001 through November 14, 2001, Hartman received physical therapy from The pt Group in Greensburg, Pennsylvania. By letter dated December 3, 2001, The pt Group advised Hartman's referring physician, Robert Crossey, D.O., that she was being discharged from the physical therapy program for failure to respond to their requests to schedule her remaining treatment sessions. (R. 164).

2

On August 1, 2002, Hartman underwent surgery on her right shoulder. (R. 191). Four months later, on December 30, 2002, Dr. Crossey referred Hartman to Yram Groff, M.D., an orthopedist, who assessed her with adhesive capsulitis in the right shoulder, secondary to right shoulder surgery and recommended a prolonged course of physical therapy. (R. 192). Hartman then attended ten sessions of physical therapy with Physical Therapy and Fitness in Connellsville, Pennsylvania, which included range of motion (ROM), stretching, and strengthening exercises. (R. 193-206). As with The pt Group, however, Hartman's treatment by Physical Therapy and Fitness was terminated because of her failure to appear for treatment. By letter dated March 10, 2003, physical therapist Mark King wrote to Dr. Groff to advise him of this fact. (R. 193).

On November 17, 2003, Hartman underwent a consultative examination by Aster Assesa, M.D. Dr. Assesa noted that although surgery and physical therapy alleviated Hartman's right shoulder pain, it did not resolve the problem. (R. 211). Hartman complained of constant right shoulder pain as well as mild back pain with prolonged sitting and standing. (R. 211-13). Dr. Assesa found that although Hartman's left shoulder was normal, her ROM in the right shoulder was restricted in all directions. (R. 213). Dr. Assesa diagnosed right shoulder pain with radiation to the neck and spine and restricted ROM and mild lower back pain. (R. 213).

On December 15, 2003, Gregory Mortimer, M.D., a state agency physician, evaluated the record evidence and completed a residual functional capacity (RFC) assessment on Hartman. Dr. Mortimer found that Hartman could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk and sit for 6 hours in an 8-hour day. (R. 270). Dr. Mortimer found that Hartman could not push and pull with the right arm and he recommended limited reaching

3

and handling with the right arm. (R. 270, 272). He also concluded that Hartman should never climb with her hands or crawl, but could perform other postural activities occasionally. (R. 271). Finally, Dr. Mortimer concluded that Hartman's subjective complaints were only partially credible in light of the medical record and her reported daily activities. (R. 274).

On December 18, 2003, Hartman was evaluated by Thomas Larson, M.D., an orthopedist. (R. 285). During that visit, Hartman reported persistent neck and right arm pain that radiated down to her right hand. Dr. Larson found that Hartman had a mild limitation in ROM in her right shoulder, but no limitation in ROM of her cervical spine. (R. 286). Despite the limit in her ROM, the neurological findings for Hartman's right arm were normal. (R. 286). During a follow-up examination on December 30, 2003, Dr. Larson found that Hartman exhibited "good range of motion in the right shoulder and in her cervical spine." (R. 285). Moreover, her cervical MRI showed only mild degenerative changes. (R. 285).

On June 25, 2004, Hartman presented to orthopedist Robert G. Liss, M.D., complaining of back pain, which she said was minimally relieved by prescription medications. (R. 283). Hartman denied any muscle weakness, but stated that she utilized a cane because her leg occasionally "gave way." (R. 283). Dr. Liss noted that she was overweight, with a fairly normal gait, no antalgia, and in no acute distress. (R. 283). Although the ROM in Hartman's right shoulder was limited, her cervical motion was functional, and her cervical MRI showed minimal degenerative changes at C4-5, without spinal cord encroachment or nerve root impingement. (R. 283). Dr. Liss found that Hartman's findings and complaints were "out of proportion to the MRI results." (R. 283). He concluded that there was "no good explanation for her pain," her surgical options were limited, and she should seek treatment at a pain clinic. (R. 283).

4

Finally, on January 22, 2004, Hartman presented to Cherry Tree Pain Clinic, complaining of shoulder, thoracic, and lumbar pain. (R. 336). She was evaluated by Shashikant Patel, M.D., who diagnosed her with adhesive capsulitis in her right shoulder, mechanical pain, and neck and low back pain. (R. 337). Dr. Patel planned to receive the reports from Hartman's previous physicians and see her in the office in four weeks. (R. 337). Over six months later, on August 5, 2004, Hartman returned to Dr. Patel complaining of pain "all over the body," soreness all day, sleep disturbance, and headaches. (R. 335). Dr. Patel noted that Hartman exhibited signs of fibromyalgia and should be evaluated by a rheumatologist. (R. 335). Dr. Patel also recommended that she undergo physical therapy, lose weight, and continue taking Paxil, Ultracet, and Celebrex. (R. 335). On October 28, 2004, Dr. Patel diagnosed Hartman with chronic fatigue syndrome (fibromyalgia). (R. 341)

During the hearing, the ALJ asked vocational expert (VE) Eugene Czuczman whether jobs were available for a younger individual with a high school education who had the RFC to perform light work without environmental irritants, but could not: (1) push or pull with the right arm or work at heights or near hazards; or (2) reach, handle, or finger with the right hand or lift with the right arm alone. (R. 75-76). The VE concluded that such a person could work as a: photographic machine operator (80,000 jobs nationally) and as an inserting machine operator (80,000 jobs nationally). The ALJ also asked the VE whether jobs were available for an individual with Hartman's age, education, and vocational experience who had the RFC to perform sedentary work with the same limitations. The VE testified that such a person could work as a surveillance system monitor (200,000 jobs nationally) and plastic design applier (60,000 jobs nationally). (R. 77-78).

## IV.    Standards of Review

Judicial review of the Commissioner's final decision on disability claims is provided by

42 U.S.C. §§ 405(g)[1] and 1383(c)(3).[2]  Section 405(g) permits a district court to review

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review

thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f,

regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II

are pertinent to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3

(1990).

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.*

*Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings.  *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Supreme Court has explained that

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he
> was a party, irrespective of the amount in controversy, may obtain a review of such decision by a
> civil action . . . brought in the district court of the United States for the judicial district in which the
> plaintiff resides, or has his principal place of business . . . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1)
> shall be subject to judicial review as provided in section 405(g) of this title to the same extent as
> the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

6

"substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura,* 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its

7

action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings. *Stewart*, 714 F.2d at 290. In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

8

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59;

9

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett,* 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson,* 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984);

11

*Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403,

409 (3d Cir. 1979).  Similarly, an ALJ must give great weight to a claimant's subjective

description of inability to perform even light or sedentary work when this testimony is supported

by competent evidence.  *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433

(3d Cir. 1999), *relying on Dobrowolsky.*  When a medical impairment that could reasonably

cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the

pain or symptom, and the extent to which it affects the individual's ability to work.  This

evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately

stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R.

§ 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

　　　If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a

conclusion must be indicated in the decision.  *See Cotter*, 642 F.2d at 705.  The United States

Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other

symptoms are alleged, the determination or decision rationale must contain a thorough discussion

and analysis of the objective medical and the other evidence, including the individual's

complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale

must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical

explanation of the individual's ability to work."  *Schaudeck*, 181 F.3d at 433, *quoting* Social

Security Ruling ("SSR") 95-5p.

　　　Subjective complaints of pain need not be "fully confirmed" by objective medical

evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195.  Although "there must be objective medical evidence of some condition that could

12

reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1070-71, *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

## V.    Analysis

### A.    Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id*. at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation

13

or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ "must 'explicitly' weigh all relevant, probative and available evidence . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition . . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno*, 40 F.3d at 48 (citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (when the ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit . . . .").

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

14

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and state the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[3] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation

---

[3] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight.* When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner,"
explain in some detail the distinction between medical opinions entitled to controlling weight and
those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled
to controlling weight does not mean that the opinion is rejected. It may still be entitled to
deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical
opinion is not entitled to controlling weight or special significance because it is on an issue
reserved for the Commissioner,[4] these Social Security Rulings require that, because an
adjudicator is required to evaluate all evidence in the record that may bear on the determination
or decision of disability, "adjudicators must always carefully consider medical source opinions
about any issue, including opinions about those issues that are reserved to the Commissioner,"
and that such opinions "must never be ignored . . . ." SSR 96-5p, Policy Interpretation.
Moreover, because the treating source's opinion and other evidence is "important, if the evidence
does not support a treating source's opinion on any issue reserved to the Commissioner and the
adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must
make 'every reasonable effort' to recontact the source for clarification of the reasons for the
opinion." *Id.*

Finally, a medical opinion is not entitled to controlling weight if it is not "well-supported
by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the
other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 3,
*supra*. Where an opinion by a medical source is not entitled to controlling weight, the following

---

[4] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or
equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from
returning to past relevant work, and whether an individual is "disabled" under the Act.

16

factors are to be considered:  the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors.  20 C.F.R. § 404.1527 (d)(1-6).

B.    State Agency Consultants

Medical consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical . . . consultants or other program physicians . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled."  20 C.F.R. § 404.1527 (f)(2)(i).  *See also* SSR 96-6p:  Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1.  Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.  2.  Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

C.    Application

Plaintiff raises two arguments on appeal.  First, she claims that the ALJ disregarded the testimony of the treating physician, Dr. Patel.  (Pl. Br. at 6).  Next, she argues that the ALJ erred in finding her testimony not totally credible.  *Id.*

In support of her first argument, Hartman emphasizes that Dr. Patel found that she is suffering from chronic fatigue syndrome (fibromyalgia).  Hartman submits that the ALJ usurped

the role of the physician when he concluded that Hartman's "complaints of generalized body pain have not been clinically evaluated to the point where they cannot be explained by another physical or mental disorder." (R. 19).

Contrary to Hartman's argument, the record reflects that the ALJ did not "totally disregard" Dr. Patel's conclusions and did not act as a physician in weighing evidence. The ALJ noted that Social Security Ruling 99-2p states that chronic fatigue syndrome (fibromyalgia) is recognized as a medically determinable impairment when certain conditions are met. (R. 19). As the Commissioner correctly notes in its brief, however, a diagnosis of fibromyalgia does not, *ipso facto,* create a disability under the Act. *See, e.g., Tsarelka v. Secretary of Health & Human Svcs.,* 842 F.2d 529, 534 (1st Cir. 1988); *Preston v. Secretary of Health & Human Svcs.,* 854 F.2d 815, 819 (6th Cir. 1988).

As a factual matter, the ALJ noted correctly that Hartman's first complaint of generalized body pain consistent with fibromyalgia was on August 5, 2004. (R. 19). During that visit, Dr. Patel found that Hartman had signs consistent with fibromyalgia, but did not establish a diagnosis. Instead, Dr. Patel referred Hartman to a rheumatologist, *i.e.*, a doctor specializing in such conditions. (R. 339). Although Dr. Patel did diagnose Hartman with chronic fatigue syndrome during the October 28, 2004 visit (R. 341), the ALJ acknowledged this fact and found it unsupported by the medical evidence of record. In this regard, the ALJ noted that Hartman's principal treating physician, Dr. Crossey, treated Hartman from October 15, 2001 until October 19, 2004. (R. 18). Dr. Crossey's notes indicate back and right shoulder pain, consistent with the diagnosis of adhesive capsulitis. Furthermore, the ALJ reviewed accurately and in detailed fashion the treatment provided to Hartman by Drs. Groff, Assessa, Larson, Neuschwander, and Liss, all of which was consistent with the symptomology and diagnosis of adhesive capsulitis, not

18

fibromyalgia. (R. 21-22). Moreover, the ALJ noted that the state agency physician, Dr.

Mortimer, found that Hartman had the RFC to perform a range of light work and that this finding

was consistent with the medical evidence of record, subject to certain modifications. (R. 23).

Applying the law to the foregoing, the Court first notes that Dr. Patel's opinion regarding

Hartman's impairments is not dispositive because "a treating source's opinion on the issue(s) of

the nature and severity of [a claimant's] impairment(s)" is entitled to controlling weight only if it

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the claimant's] record . . . ." 20 C.F.R. §§

404.1527(e)(2), 416.927(d)(2).    The record in this case indicates that the ALJ considered other

substantial evidence which is contrary to Dr. Patel's assessment of Hartman's condition. The

ALJ considered Hartman's descriptions of daily activities, the treatment notes of Drs. Crossey,

Patel, Groff, Larson, Neuschwander, the findings of Dr. Assessa, and the opinion of Dr.

Mortimer, the state agency consultant. (R. 18-23).    Significantly, Dr. Mortimer found that the

medical record indicated that while Hartman was unable to push or pull, was limited in her

ability to reach with her right arm, and should never climb or crawl, she could perform other

postural changes occasionally. (R. 270-71, 274).    These opinions are entitled to weight, 20

C.F.R. §§404.1527(f), 416.927(f), and the ALJ did not err in considering them, especially when

they corroborated the reports of the other examining physicians. *See, e.g., Jones v. Sullivan,* 954

F.2d 125, 129 (3d Cir. 1991).

In sum, Hartman errs when she claims that the ALJ disregarded Dr. Patel's opinion. As

the foregoing demonstrates, the ALJ explicitly acknowledged Dr. Patel's findings and considered

them in conjunction with the entire medical record, and then made a reasoned determination of

Hartman's RFC.

The crux of Hartman's second argument is that the ALJ erred when he made a partially adverse credibility determination because the ALJ found Hartman believable with respect to her inability to perform her past relevant work.  (Pl. Br. at 8, ¶¶ 5, 7 ).  In her brief, Hartman offers no case support for the proposition that when an ALJ finds that a claimant is unable to perform her past relevant work, he must find her subjective complaints entirely credible as well.  The Court is unaware of any such legal principle.

Regarding the merits of the ALJ's adverse credibility determination, the Court first notes that Hartman's own treating physician, Dr. Liss, found her complaints of subjective pain to be not entirely credible.  In the June 25, 2004 report of his examination of Hartman, Dr. Liss noted that Hartman's complaints were "out of proportion to the MRI results."  (R. 283).  Likewise, the state agency physician, Dr. Mortimer, found that Hartman's subjective complaints were only partially credible.  (R. 274).  Like Drs. Liss and Mortimer, the ALJ was entitled to make an adverse credibility determination as to Hartman's testimony regarding her limitations.  *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983).  "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  *Shively v. Heckler,* 739 F.2d 987, 989-90 (4th Cir. 1984).  This is especially true in a case such as this one, "where the unique subjectivity of the condition and the ease with which its symptoms can be feigned emphasizes the need to endow the ALJ, as the initial fact-finder, with the authority to determine issues of credibility.  *Wilson v. Apfel,* No. 98-6511, 1999 WL 993723 *3 (E.D. Pa. October 29, 1999).

For all the foregoing reasons, substantial evidence exists in the record to support the ALJ's partially adverse credibility finding.  Accordingly, the ALJ's determination was consistent with the governing regulations.  *See* 20 C.F.R. §§404.1529 and 416.929(b).

## VI. Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that his ruling is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.


March 7, 2006

            s/ Thomas M. Hardiman
           Thomas M. Hardiman
           United States District Judge